# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

WAYNE ATKINSON and
RICHARD ARMATROUT,

    Plaintiffs,

v.                                           Case No. 8:08-cv-691-T-30TBM

WAL-MART STORES, INC. and
WAL-MART STORES, INC.
CORPORATION GRANTOR TRUST,

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Amended Motion to Certify Class (Dkt. #35), Plaintiff's Memorandum in Support of Motion to Certify Class (Dkt. #36), Defendants' Memorandum in Opposition to Motion to Certify Class (Dkt. #43), and Plaintiff's Reply to Response to Motion to Certify Class (Dkt. #47). The Court, having considered the motion, memoranda, exhibits, affidavits, depositions, and being otherwise advised in the premises, concludes that Plaintiff's motion to certify class should be denied.

### Background.

Beginning in 1993, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") adopted a Corporate Owned Life Insurance ("COLI") program and established the Wal-Mart Stores, Inc. Corporation Grantor Trust in Georgia (the "Trust") to purchase COLI policies for its employees who were enrolled in the Company health plan and did not opt out of the program.

From December 1993 to July 1995, Wal-Mart purchased over 350,000 COLI policies for Wal-Mart employees in the United States. The COLI policies were entirely funded by Wal-Mart at no cost to any employee. Wal-Mart paid all the premiums and other costs of this program. To purchase the COLI policies, Wal-Mart provided the insurance companies involved with employee information consisting of name, social security number, sex, date of birth, state, zip code of residence and annual compensation.

On December 14, 1993, Wal-Mart sent out a Personal Benefits News Announcement to all Wal-Mart Location Managers.[1] Location Managers were instructed to distribute the announcement to all associates enrolled in the medical plan at each location. Additionally, after the adoption of the COLI program, Wal-Mart drafted a supplement to the Benefits Book (which is sent out annually to all employees and provided to new employees once they are eligible to participate in Wal-Mart's employment benefit programs) explaining the plan as a "new death benefit" and a "Wal-Mart owned life insurance program". Wal-Mart's employee benefit programs included medical and dental benefits, dependent life and disability insurance, company paid life insurance, and optional insurance.

The COLI program was offered to all active associates participating in the Wal-Mart medical plan. Each eligible employee was given an opt-out form to complete and return to Wal-Mart if they did not wish to be covered by the COLI program. Otherwise, participation in the COLI program was automatic for associates enrolled in the group health plan. The

---

[1] Dkt. #43-6.

beneficiaries of employees who were enrolled in the COLI program through May 1995 received a special death benefit of either $5,000 or $10,000, at no cost to the employees or the beneficiaries.² The remainder of the benefits were payable to Wal-Mart.

The COLI program was designed to provide financial benefits to Wal-Mart from tax treatments such as premium loan interest deductions.³ Such programs were heavily marketed by insurance companies to large corporations in the early 1990's. In August 1996, however, Congress passed the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), which among other things eliminated interest deductions related to COLI plans. Thereafter, Wal-Mart began the process of unwinding its program. By January 2000, it had fully surrendered all of its COLI policies.

Plaintiff Wayne Atkinson ("Plaintiff") is a Florida resident who resides in Hudson, Florida. He sues on behalf of the Estate of Rita Atkinson, deceased. Rita worked as an hourly-wage, rank-and-file employee at a Wal-Mart store in Florida. She died in 1996 while residing in Pasco County, Florida. Wayne Atkinson is Rita's surviving spouse and the

---

² The Court notes that beneficiaries of deceased employees would have been on notice of the existence of the COLI program upon receipt of the $5,000 or $10,000 benefit.

³ During the past decade there have been cases involving the purchase by large corporations of life insurance on rank-and-file employees under policies owned by and payable to the corporation. Such programs were designed so that annual premiums, fees, and policy loan interest would exceed the projected annual death benefits and net cash value of the policies. The programs were also designed to generate large amounts of interest on an insured corporation's policy loans that the corporation would then deduct for income tax purposes. The income tax savings from the deductions for interest and fees were projected to be substantially in excess of the projected net costs of maintaining the COLI program. Projections for such programs typically provided a pretax loss and an after-tax gain. *See e.g., Winn-Dixie Stores, Inc. And Subsidiaries v. Commissioner of Internal Revenue*, 113 T.C. No. 21 (1999) and *Winn-Dixie Stores, Inc. and Subsidiaries v. Commissioner of Internal Revenue*, 254 F.3d 1313 (2001).

Executor of her estate. Wal-Mart received COLI policy benefits in the amount of $66,048.70 as a result of Rita's death.

On March 5, 2008, Plaintiff Wayne Atkinson, as the executor of the Estate of Rita Atkinson, filed a Class Action Complaint (Dkt. #2) against Defendants.[4] On April 11, 2008, the complaint was removed to this Court pursuant to 28 U.S.C. § 1332(d). The complaint brings two causes of action against Defendants: Count I - Declaratory Relief and Count II - Unjust Enrichment. Plaintiff seeks a declaration from this Court stating that neither Wal-Mart nor the Trust had an insurable interest in the lives of Wal-Mart's Florida rank-and-file employees. Upon the rendition of such declaration, Plaintiff then seeks the imposition of a constructive trust over the policy benefits paid to Wal-Mart and the Trust as a result of the deaths of Wal-Mart's Florida rank-and-file employees. In the alternative, pursuant to Plaintiff's unjust enrichment claim, Plaintiff seeks to disgorge the policy benefits paid to Wal-Mart and the Trust. Plaintiff alleges that Wal-Mart used its employees' personal information without their consent in order to obtain COLI policies, and therefore, Wal-Mart and the Trust benefitted from the use of such information and became unjustly enriched by the same.

Plaintiff's amended motion for class certification seeks to certify a class consisting of 132 estates of rank-and-file Wal-Mart employees whose deaths resulted in the payment

---

[4] In Plaintiff's Amended Motion for Class Certification, Richard Armatrout's previous request for appointment as a class representative is withdrawn.

of insurance benefits to Wal-Mart pursuant to Wal-Mart's COLI program.[5]

## Discussion.

**I.     Standing.**

"[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "Any analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). "Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Griffin*, 823 F.2d at 1482.

> In order to demonstrate Article III standing, a plaintiff must make three showings:
>
> First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not conjectural or hypothetical." Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[6]

No legally cognizable injury arises unless an interest is protected by statute or otherwise.

---

[5] Plaintiff's proposed class is defined at Dkt. #36, Pages 9-10.

[6] *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005), citing *Dillard v. Baldwin County Com'rs*, 225 F.3d 1271 (11th Cir. 2000).

*Bochese*, 405 F.3d at 980.

## A. Recovery of Policy Proceeds By Unintended Third Party to Policy is Not A Legally Cognizable Remedy Under Applicable Florida Law.

Plaintiff asserts claims for declaratory judgment and unjust enrichment grounded on the alleged lack of insurable interest by Wal-Mart and the Trust in the lives of Wal-Mart's Florida employees. Defendants argue that applicable Florida law does not provide Plaintiff with the right to institute an action and seek the proceeds of insurance policies under the COLI program, because, if indeed, an insurable interest is lacking, then the sole available remedy is to void such policies. Defendants' argument is well taken.

Plaintiff has not and cannot cite any applicable[7] Florida statutory or case law that supports a right to institute this action against Defendants. Further, there exists no applicable statutory or case law directly addressing the issue presented, i.e. whether a personal representative of a deceased employee may maintain an action to recover life insurance benefits received by an employer pursuant to a COLI program operated between 1993 and 2000.

### 1. Lack of insurable interest voids policy.

"Florida courts have long held that insurable interest is necessary to the validity of an insurance contract and, if it is lacking, the policy is considered a wagering contract and void *ab initio* as against public policy." *See Knott v. State ex rel. Guaranty Income Life Ins. Co.*,

---

[7] All relevant events occurred prior to January 2000. Thus, Florida common law and statutory law in effect in 2000 would be applicable in the analysis of this case.

186 So. 788, 789-790 (Fla. 1939). "In Florida, public policy demands that the beneficiary of an insurance policy covering either life or property have an insurable interest in the life or property insured." *Life Insurance Company of Georgia v. Lopez*, 443 So.2d 947, 950 (Fla. 1984). "In the absence of an insurable interest, the law condemns such policies as mere wagering contracts." *Id.*, citing *Meerdink v. American Insurance Co.*, 188 So. 788 (Fla. 1939); *see also Peninsular Fire Insurance Co. v. Fowler*, 166 So.2d 206 (Fla. 2d DCA 1964).

Typically, only the insurer has standing to object to the lack of any insurable interest. *See* Lee R. Russ & Thomas F. Segalla, 3 Couch on Insurance § 41:5 (3d ed. 1997) ("The majority of courts which have considered the issue hold that only the insurer can raise the objection of want or insurable interest.") Florida courts have not directly addressed the standing issue of whether an entity or person other than the insurer may object to the lack of any insurable interest.[8]

### 2. Written consent requirement.

Furthermore, Plaintiff has cited no applicable Florida decisional or statutory law supporting the argument that a policy of life insurance taken out without the consent or knowledge of the person whose life is insured is against public policy and unenforceable.

---

[8] There is one distinguishable exception to this general rule where a Florida court allowed an insured to bring a tort action for negligence against the insurer where the policy beneficiary attempted to murder the insured in order to collect the policy benefits. *See e.g. Life Insurance Company of Georgia v. Lopez*, 443 S.2d 947 (Fla. 1984). Even under such circumstances, the life insurance policy is void *ab initio* if it is shown that the beneficiary procured the policy with an intention to murder the insured. *See Lopez v. Life Insurance Company of America*, 406 So.2d 1155, 159 (Fla. 4th DCA 1981).

Neither Florida law, the Florida Insurance Code, nor federal law seem to indicate a written consent requirement until after August of 2006, when Congress passed the Pension Protection Act, which requires that employers obtain the written consent of rank-and-file employees insured under a COLI policy and notify them of the maximum amount of the policy. *See* Internal Revenue Code, § 101(j). Similar consent requirements were not specifically adopted by the Florida legislature until July 1, 2008, when Florida Statute § 627.404 was substantially amended to add, among other provisions, a requirement that the written consent of the insured be obtained as a prerequisite to the issuance of a contract of insurance on the insured. *See* § 627.404(5). The amendment also created for the first time in Florida a statutory right of recovery by an estate against persons who receive insurance policy benefits if such persons did not have an insurable interest in the insured. *See* Senate Staff Analysis and Economic Impact Statement, Senate Bill 648, March 24, 2008; *see also* § 627.404(4), Florida Statutes (2008).

Senate Bill 648 specifically states, "The bill does not address whether an insurance contract is void if there is not an insurable interest, or if the insurer is liable if it knowingly or negligently issues a policy to a person who does not have an insurable interest in the insured." FL Staff An., S.B. 648, 3/24/2008, p. 6. Furthermore, there is no indication in the relevant staff analysis or statutory notes that the amendments were meant to apply retroactively. "In Florida, without clear legislative intent to the contrary, a law is presumed to apply prospectively." *See Bates v. State*, 750 So.2d 6, 10 (Fla. 1999). Where the legislature includes an effective date on which statutory amendment takes place, as here, then

such inclusion rebuts any argument that retroactive application was intended. *See Zuckerman-Vernon Corp.*, 354 So.2d 353, 358 (Fla. 1977).

Accordingly, applicable Florida law does not provide Plaintiff with a legally cognizable right to institute an action against Defendants seeking: (I) declaratory relief that Wal-Mart lacked an insurable interest; (ii) a constructive trust against the proceeds of insurance policies under the COLI program; or (iii) a claim for unjust enrichment. The sole available remedy under applicable Florida law is to void such policies. For these reasons, the Court concludes that Plaintiff lacks standing to bring Counts I and II. Since Plaintiff lacks standing to bring the asserted claims on his own behalf, he also lacks standing to represent a class asserting such claims. Therefore, Plaintiff's amended motion for class certification should be denied.

**II.** *Sua Sponte* **Dismissal.**

Since the Court has concluded that Plaintiff lacks standing to bring an action for declaratory relief and unjust enrichment under the allegations of the complaint, Plaintiff's complaint should be dismissed. *See, e.g., Hammond v. Reynolds Metals Co.*, 219 Fed. Appx. 910, 915 (11th Cir. 2007) (affirming district court's *sua sponte* dismissal of claims for lack of standing).

In addition, as a result of this Court's denial of Plaintiff's motion for class certification, this Court now lacks subject matter jurisdiction over this action. This Court's original jurisdiction was premised on Plaintiff's allegations under the Class Action Fairness Act (the "CAFA"). Such allegations, however, no longer are relevant. Plaintiff's complaint

states, in pertinent part: "The Atkinson Estate believes, and therefore alleges, that Wal-Mart received policy benefits as a result of Rita Atkinson's death in an amount less than $75,000."[9] Further, in Plaintiff's Memorandum in Support of its Amended Motion for Class Certification, Plaintiff acknowledges, "Wal-Mart received $66,048.70 from its policy on Rita."[10]

Title 28 U.S.C. § 1332(a)(1) states:

> The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds that sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.[11]

Based on the foregoing, the Court concludes that Plaintiff's claim is actually for less than the required jurisdictional amount. Rule 12(h)(3) of the Federal Rules of Civil Procedure states, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Accordingly, pursuant to Fed.R.Civ.P. 12(h)(3), this action should be dismissed.[12]

It is therefore ORDERED AND ADJUDGED that:

1.  Plaintiff's Amended Motion to Certify Class (Dkt. #35) is **DENIED**.

---

[9] Dkt. #2, Paragraph 9.

[10] Dkt. #36, Page 7, referencing Dkt. #3, Affidavit of Thomas G. Emerick.

[11] 28 U.S.C. § 1332(a)(1).

[12] Since this case is being dismissed for lack of standing and lack of jurisdiction, this Court will not address Defendants' statute of limitations argument. It appears that Counts I and II would be barred by the applicable four year statute of limitations. Pursuant to Defendants' response to Plaintiff's motion to certify class, all policies were surrendered by January of 2000 and the estates of any deceased employees would have been on notice of the existence of such policies upon receipt of a $5,000 or $10,000 benefit before or during the same time period.

2. This case is hereby **DISMISSED**.

3. The Clerk is directed to **CLOSE** this case and terminate any pending motions.

**DONE** and **ORDERED** in Tampa, Florida on May 26, 2009.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2008\08-cv-691.mt certify class 35.wpd